[Civ. No. 15776.   First Dist., Div. One.   Apr. 16, 1954.]

ANTONE MATOZA, Respondent, v. HENRY MATOZA et al., Appellants.

Gene Rhodes and J. Warren Manuel for Appellants.

Harris, Darter & Lawlor for Respondent.

McMURRAY, J. pro tem.*—Antone Matoza sued his brother, Henry Matoza, and his nephew, Henry Matoza, Jr., for fraud and an accounting of partnership profits. Plaintiff obtained a judgment for $35,653.61 and the court made an order awarding $3,000 to the referee appointed in the matter and provided that this amount be taxable as costs. From this judgment and order defendants appeal.

Antone Matoza does not speak, read or write the English language; Henry speaks English, but does not read it. In 1940 Antone and Henry commenced farming as equal partners. Henry was the business manager, paying all obligations, receiving all payments and doing all the banking; Antone worked in the fields. At this time Henry contributed equipment and money to the partnership of the value of $9,101.70; Antone made no capital contribution.

In 1945 Henry, Jr., became an equal partner with his father and uncle and this partnership continued until the end of 1949. At that time Henry obtained Antone's signature on a dissolution agreement and paid him $10,000 for his

---

*Assigned by Chairman of Judicial Council.

partnership interest in the business, Henry to have the right to continue therein. Antone thereafter commenced this action.

After reference the court found that Henry had at all times from 1940 through 1949 done all the banking for the partners; that he kept no books of account; that the only documents and papers available to the court were: (a) copies of income tax work sheets and returns made on behalf of the partnerships, which did not set forth the annual incomes nor the total annual expenses correctly; (b) copies of various bank statements for the years 1943 to 1950; (c) approximately 4,000 cancelled checks through the years 1942-1950, which are not related to any other records; (d) various leases, invoices, statements, correspondence, bills and other documents which were so unclassified as to be unrelated to any withdrawals or deposits shown on the bank statements. The court also found that Henry had converted partnership funds to his own benefit.

Appellants' principal grounds of appeal from the judgment are that the referee in taking the accounting used inconsistent methods which distorted the facts and that an improper method was used to determine the partners' withdrawals.

■ The first inconsistency complained of is that the referee treated certain expenditures, in the last year of the partnership as personal withdrawals by Henry rather than as partnership expenditures and that this procedure resulted in a change from a cash to an accrual method of accounting since there was no credit given Henry for like expenditures at the commencement of the first partnership. The contention is without merit. There is no evidence that Henry made like expenditures at the commencement of the partnership. The expenditures in 1949 were in the nature of prepaying costs of continued operation and the referee was, therefore, justified in treating them as personal withdrawals by Henry, since he. alone would benefit therefrom.

■ The next inconsistency alleged is that the use of both the figures on the income tax returns and those on bank statements and cancelled checks distorted the withdrawals since this resulted in charging certain amounts twice. In view of the evidence before the court below this contention fails. There were no regular books of account, the referee was bound to consider all the evidence available in attempting to arrive at some sensible picture of the partners' withdrawals and, by correlating the income tax and bank statements, it appears that the referee did the best he could with the welter of unrelated matter submitted to him.

■ Appellants next urge that it was inconsistent to shift from a detailed cash accounting to a net worth method for the years 1944 and 1949; the last years of each of the partnerships. The argument is more impressive than is its demonstration. At the trial of the matter the same proposition was urged by appellants and expert testimony on the subject was heard. On cross-examination the expert admitted, after demonstration, that the method used by the referee resulted in an identical figure with that which would be reached under the method urged as proper. In treating a similar contention it was said in *Whann* v. *Doell*, 192 Cal. 680, 684 [221 P. 899] : "On the other hand, the contention that an account must be stated in an accepted bookkeeping fashion cannot be maintained . . . Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how those issues were disposed of by the trial court will suffice for the purpose, whether the matter appears from the findings, the decree or a bill of exceptions, showing the controversy, and the disposition thereof."

■ The last inconsistency cited is that there was a distortion of facts by using records for some purposes but not for others. Namely, that income tax returns were used as the sole basis for determining operating costs and withdrawals in the years 1940 and 1941 and that for subsequent years both income tax and bank statement figures were used for these purposes. In 1940 and 1941 the only documents available to the referee were the copies of income tax returns, thereafter he carefully surveyed and correlated the bank figures with the income tax figures to arrive at the best picture of the partnership activities. The contention is unsound.

All of these urged inconsistencies are more concerned with method than substance. The end result would be the same under the methods used by the referee and those urged as proper by appellants if the same figures were used.

The next contention of appellants is that the method of determining withdrawals is improper. This contention is covered in previous paragraphs, but in effect is an attack upon the determination of the referee and court as to what were personal withdrawals. A detailed recounting of these items would serve no purpose as this contention at best raises a conflict in the evidence. ■ On appeal this court will resolve such conflicts in favor of respondent. (*Cohn* v. *Cohn*,

1 Cal.2d 313, 314 [34 P.2d 1000].) ▮ Under the circumstances here it is ill-advised for appellants to complain that items not satisfactorily explained were charged to personal withdrawals. Although Henry was in complete charge of the business, he had a defective recollection of a number of transactions, among them was a $7,200 check relative to which he stated, ''I don't remember what that's for,'' and as to a number of lesser transactions his testimony was of like weight. In such a state of the record the language of *Olmo* v. *Olmo,* 56 Cal.App.2d 590 [133 P.2d 866], becomes reasonably apposite when it is said at page 595 : ''The referee was confronted with an incomplete and imperfect set of books, . . . Where records were missing, he resorted to a system of computations based upon average receipts and expenditures, which was the best method he could pursue under the circumstances. If the results arrived at have been to appellants' disadvantage he cannot complain of a situation brought about by his own dishonest manipulation.''

▮ The appellants urge that the allowance of $3,000 to the referee was excessive for his services since he could have accomplished the same result by using a different method ; preferably, one of those now urged by appellants. The referee devoted 230 hours to this matter, held hearings, prepared accountings, marshalled the conglomerate mass of checks and documents, furnished office space for the hearings, paid telephone, stationery and postage expenses and appeared in court hearings. All of this was done after a stipulation of the parties to the effect that ''the compensation of . . . [the] sole Referee herein, for his services pursuant to the order of Reference made by the above entitled Court . . . shall be such amount as may be fixed by the above entitled Court.'' Even without such stipulation it is readily apparent that such amount of compensation is reasonable and just. It would be reckless to disallow compensation to a referee for securing all of the information which might be germane to the reference on a basis that the work could have been avoided by a blind adoption of some rigid accounting method which would not take into consideration all of the evidence, of whatever weight, available.

The judgment and order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 14, 1954.